IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOHN M. BUFORD, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 1:23-cv-1193-RP |
| § | |
| § | |
| WALTON TEXAS, LP, § | |
| WALTON TEXAS GP, LLC, and § | |
| WALTON GLOBAL HOLDINGS, LLC § | |
| § | |
| *Defendants.* § | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT**

Karl G. Dial
  State Bar No. 05800400
  dialk@gtlaw.com

**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

**ATTORNEY FOR DEFENDANTS**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. RELEVANT FACTS ........................................................................................................ 2

III. APPLICABLE LEGAL STANDARD .............................................................................. 6

IV. ARGUMENT AND AUTHORITIES ................................................................................ 7

    A. Plaintiff fails to state a plausible claim for fraud upon which relief can be granted. .................................................................................................................. 7

        i. Plaintiff's fraud claim is too vague and fails under Rule 9(b). ................... 7
        ii. Plaintiff's fraud claim is barred by the at-will employment doctrine. ................................................................................................... 9

    B. Plaintiff fails to state a claim for quantum meruit upon which relief can be granted. ................................................................................................................ 10

        i. The Employment Agreement governs Plaintiff's bonus compensation, if any. ..................................................................................................... 10
        ii. Plaintiff's work was performed within the scope of his Employment Agreement. ............................................................................................ 11
        iii. Plaintiff performed the work to receive his salary. ................................. 12

    C. Plaintiff fails to state a claim for breach of contract upon which relief can be granted. ................................................................................................................ 13

        i. The Employment Agreement's terms preclude Plaintiff's claim for breach. ..................................................................................................... 13
        ii. The Amended Complaint does not allege any specific term was breached. ................................................................................................ 14

    D. Amendment Would be Futile ............................................................................... 14

V. CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ...................................................................................................8

*Allen v. Hays*,
  812 F. App'x. 185 (5th Cir. 2020) ............................................................................................2

*Amacker v. Renaissance Asset Mgmt., LLC*,
  657 F.3d 252 (5th Cir. 2011) ....................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................6

*Caine v. Wells Fargo Bank, N.A.*,
  No. H-17-2046, 2018 WL 3195102 (S.D. Tex. Jun. 8, 2018) .................................................14

*Coleman v. Sweetin*,
  745 F.3d 756 (5th Cir. 2014) ....................................................................................................7

*Dittmann v. D.B. Zwirn & Co., L.P.*,
  2010 U.S. Dist. LEXIS 10506 (S.D. Tex. Feb. 8, 2010) ...................................................10, 11

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*,
  302 F.3d 552 (5th Cir. 2002) ....................................................................................................8

*Keith v. Stoelting, Inc.*,
  915 F.2d 996 (5th Cir. 1990) ....................................................................................................7

*King v. Wells Fargo Bank, N.A.*,
  No. 3-11-CV-0945-M-BD, 2012 WL 1205163 (N.D. Tex. March 20, 2012) .........................14

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ....................................................................................................6

*Lovelace v. Software Spectrum, Inc.*,
  78 F.3d 1015 (5th Cir. 1996) ....................................................................................................7

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
  751 F.3d 368 (5th Cir. 2014) ..................................................................................................15

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) ....................................................................................................8

*Sandhar v. Grewal*,
  No. H-08-2348, 2009 WL 175073 (S.D. Tex. Jan. 23, 2009)..................................................14

*Scanlan v. Tex. A&M Univ.*,
  343 F.3d 533 (5th Cir. 2003) ....................................................................................................2

*Smith Inter., Inc. v. Egle Group, LLC*,
   490 F.3d 380 (5th Cir. 2007) ..................................................................................................13

*U.S. ex Rel. Willard v. Humana Health Plan*,
   336 F.3d 375 (5th Cir. 2003) ..................................................................................................15

**State Cases**

*Barrow-Shaver Resources Co. v. Carrizo Oil & Gas, Inc.*,
   590 S.W.3d 471 (Tex. 2019)....................................................................................................7

*Beverick v. Koch Power, Inc.*,
   186 S.W.3d 145 (Tex. App. - Houston [1st Dist.] 2005, no pet.) ....................................11, 12

*Fortune Production Co. v. Conoco, Inc.*,
   52 S.W.3d 671 (Tex. 2000)....................................................................................................11

*Inglish v. Prudential Ins. Co. of Am.*,
   928 S.W.2d 702 (Tex. App.-Houston [1st Dist.] 1996, writ denied).....................................11

*Murray v. Crest Constr., Inc.*,
   900 S.W.2d 342 (Tex. 1995)..................................................................................................11

*Sawyer v. E.I. Du Pont De Nemours and Co.*,
   430 S.W.3d 396 (Tex. 2014).........................................................................................1, 9, 10

*Truly v. Austin*,
   744 S.W.2d 934 (Tex. 1988)..................................................................................................12

**Rules**

Fed, R. Civ. P. 9(b) ...............................................................................................1, 6, 7, 8, 9, 15

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 2, 6, 7, 14

Defendants Walton Texas, LP, Defendant Walton Texas GP, LLC, and Walton Global Holdings, LLC (collectively, "Defendants" or "Walton") move to dismiss Plaintiff John M. Buford's ("Plaintiff") claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and would respectfully show the Court the following:

## I.   INTRODUCTION

Viewing Plaintiff's claims in the most favorable light, Plaintiff fails to state a plausible claim against Defendants. Plaintiff's claims for fraud, quantum meruit, and (most recently) breach of contract are based on an August 2022 "promise" for $259,000 in exchange for preparing tracts of land for sale. *See* Amended Complaint ¶¶ 10-21. He asserts Walton terminated his employment to avoid paying a "promised" $259,000. *See id.* ¶ 20.

Plaintiff's fraud claim fails for two reasons: *First*, the law precludes an at-will employee from bringing an action for fraud that is dependent on continued employment. *Sawyer v. E.I. Du Pont De Nemours and Co.*, 430 S.W.3d 396, 402 (Tex. 2014). Plaintiff, an at-will employee, was eligible to receive a *discretionary* bonus in addition to his six-figure salary. He asserts that, because he was terminated prior to receiving the discretionary bonus, Walton committed fraud. *See* Amended Complaint ¶ 20. Such a claim for fraud in the employment context is expressly prohibited under Texas law and fails as a matter of law. *Second*, Plaintiff impermissibly group pleads fraud against all Defendants and fails to specify *who, when, or how* "[any Defendant] falsely represented to [Plaintiff] in writing that it would pay him $259,000 upon the sale of the 1,164 acres," or any other elements of fraud with specificity, rendering the fraud claim deficient under Federal Rule of Civil Procedure 9(b). *See id.* ¶ 21.

As to Plaintiff's quantum meruit claim, Plaintiff fails to state a claim because (i) Plaintiff's employment for his work was governed by a written employment agreement, (ii) Plaintiff "was hired by Walton Global to perform work for the Walton Entities as necessary to prepare for sale

the . . . 1,164 acres" of land (Amended Complaint ¶ 10), and (iii) he received a benefit for performing the services of his job in the form of a salary. The law is clear that an employee cannot sue for quantum meruit under any of these circumstances. As a result, Plaintiff's quantum meruit claim fails and must be dismissed.

Plaintiff also fails to state a claim breach of contract claim. The Employment Agreement's terms expressly exclude any bonus after the termination of employment, which disqualifies Plaintiff from the bonus he now claims, and the Amended Complaint does not (and Plaintiff cannot) point to any particular contractual term that Defendants breached.

For these reasons, and as more fully set forth below, Plaintiff's Amended Complaint should be dismissed in its entirety.

## II. RELEVANT FACTS

Plaintiff sues on a discretionary bonus program, the details of which were emailed to Plaintiff (and other general managers of Walton Global Holdings, LLC ("Walton Global")) in August 2022. *See* Amended Complaint ¶ 19. From this, Plaintiff asserts he is entitled to $259,000 upon the sale of certain real property in Caldwell County, despite the sale not having occurred and Plaintiff no longer being employed. *See id.* 20, 27-28.

On July 11, 2022, Plaintiff entered into an Employment Agreement with Walton Global.[1] *See* Ex. A.[2] Relevant terms of the Employment Agreement that were included in Plaintiff's June

---

[1] Walton Global's sole member is Walton International Group, Inc., which also wholly owns Defendant Walton Texas GP, LLC, and Walton Texas GP, LLC is the sole general partner of Defendant Walton Texas, LP.

[2] Plaintiff's Employment Agreement, the August 2022 Email, and the August 2022 Bonus Program are referenced in Plaintiff's Petition and central to Plaintiff's fraud, quantum meruit, and breach of contract claims. *See* Amended Complaint ¶ 10, 15, 18, 19-20. Accordingly, Defendants attach the Employment Agreement, the August 2022 Email, and the August 2022 Bonus Program to this Motion to Dismiss as Appendix Exhibits A, B, and C, respectively. Exhibits A–C are authenticated by the Declaration of Kate Kaminski which is attached as Exhibit D. The Fifth Circuit recognizes an "incorporation-by-reference exception" allowing a district court to "consider extrinsic documentary evidence in the context of a Rule 12(b)(6) motion, thereby incorporating the document into the pleadings, if the document is referred to in the plaintiff's complaint and is central to the plaintiff's claims." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Allen v. Hays*, 812 F. App'x. 185, 189 (5th Cir. 2020).

15, 2022 offer letter (as referenced in paragraph 18 of the Amended Complaint) include the following:

- Plaintiff was an at-will employee. *See* Ex. A, § 2.

- Plaintiff received a base salary of $220,000.00, paid on a semi-monthly basis. *See* Ex. A, § 3(a).

- Plaintiff "may become eligible to participate in a discretionary bonus program ("Discretionary Bonus Program") should management decide to create such a program or allow [Plaintiff] to participate in an existing bonus plan. The payment of such bonus, ***including the amount and timing thereof, [is] in the sole, unfettered and absolute discretion of Walton***." To be eligible, Plaintiff ***"must be employed by Walton*** and must not have received a notice of termination . . . before the date upon which the bonus is actually paid." *See* Ex. A, § 3(c) (emphasis added).

- Plaintiff's "Duties and Responsibilities" as General Manager (South Texas) included "but [were] not limited to" the following:

    **Duties and Responsibilities (but not limited to):**

    - Lead the asset management processes across the entire spectrum from acquisition to disposition.
    - Effectively communicate project requirements and set expectations with all stakeholders tactfully and professionally.
    - Recognize potential risks and prepare appropriate strategic action plans; communicate and implement strategy.
    - Establish and communicate strategies for advancement of concept planning activities.
    - Develop and foster relationships with key stakeholders: local officials; homebuilders; multifamily, commercial, and industrial developers; consultants; and capital providers.
    - Annually assist with the preparation of project goals and objectives; provide quarterly and annual status reports; and recommend and take pro-active steps to meet project goals.
    - Review, monitor, and report on project schedules, milestones, deadlines, and budgets.
    - Attend meetings as necessary with the stakeholders to ensure project deliverables are maintained.
    - Coordinate with finance/accounting, marketing and legal, internal and external, in order to meet overall project goals.
    - Verify and approve payment application requests for consultants, vendors, and contractors.
    - Negotiate various consultant contracts on projects to ensure project goals and objectives are achieved.

*See* Appendix A to Ex. A.

The Employment Agreement further states that the "[Employment] Agreement may be changed only by an express agreement memorialized in writing and bearing [Plaintiff's] signature and that of Walton's Chief Executive Officer." *See* Ex. A, § 11(k).

Plaintiff was hired for and paid a salary of $220,000 to perform his duties and responsibilities (listed above). *See* Amended Complaint ¶ 15 (listing acts performed to Caldwell County properties).

On August 31, 2022, Walton Global sent an email to Plaintiff (as well as other general managers of Walton Global) (the "August 2022 Email"). *See* Ex. B. Attached to the August 2022 Email was a document entitled "Walton Asset Management Incentive Bonus Structure (General Manager)" (the "August 2022 Bonus Program") (*see* Ex. C), which detailed the then-current Discretionary Bonus Program for Plaintiff that is referenced in Section 3(c) of Plaintiff's Employment Agreement. *See* Ex. A, § 3(c).

The August 2022 Bonus Program (Ex. C), "a summary for informational purposes only," sets forth a discretionary bonus available to eligible general managers of the Walton Group. *See* Ex. C, p. 1 "Overview." Despite Plaintiff's assertion that a "promise of bonus" was made (Amended Complaint ¶ 22), both the Employment Agreement and the August 2022 Bonus Program are devoid of any promise of a bonus, let alone a specific $259,000 bonus. Instead, Defendants undeniably retained complete sole discretion regarding the payment, timing, and amount of any bonus to Plaintiff. *See* Ex. A, § 3(c). And the Terms and Conditions of the August 2022 Bonus Program further emphasize the discretionary nature of a bonus:

> **General Guidelines, Terms and Conditions of the Program**
>
> 1. Any Bonus Payment provided for under the Program is completely discretionary, and no portion of a Bonus Payment is considered earned or accrued by a Participant until it is actually paid.
>
> 2. Eligibility to participate in this Program (i) does not create any right or entitlement to participate in any plan similar to this Program in the future or in any other bonus plans that may be established or maintained by Walton, (ii) does not constitute a guarantee or establish an obligation for Walton to maintain a similar plan, award similar bonus benefits, or calculate bonuses according to the same or similar formulas in the future, and (iii) does not guarantee that any bonus will actually be paid and in some cases a Participant may not receive a bonus under the Program.
>
> 3. Any Bonus Payment awarded under this Program is a discretionary and extraordinary item of compensation that is outside a Participant's normal, regular or expected compensation, and in no way represents any portion of a Participant's salary, compensation, or other remuneration for the purpose of calculating any of the following payments: termination, severance, bonuses, overtime premiums, and any other similar payments and extra benefits.

. . .

> 8. Walton reserves the right to interpret this Program document on a fully discretionary basis and to take any action, or to decline to take any action, in relation to the administration or interpretation of the Program including but not limited to determining eligibility for participation in the Program, and to determine the amount, if any, to be paid under the Program. The CEO of Walton or his designee shall be the ultimate sole and final arbiter of any disputes under the Program, in his sole and absolute discretion.
>
> 9. Walton has adopted this Program voluntarily and reserves the right to change, suspend or discontinue this Program, or any individual's participation in this Program, at any time, with or without cause and with or without prior written notice. Walton retains the discretion to develop and apply, at any time, other bonus plans, subplans or formulas, as needed to accomplish a business purpose.

. . .

> 13. Nothing in this Program shall be construed to imply the creation of a term contract between Walton and any Participant, nor a guarantee of employment for any specific period of time.

*See* Ex. C, pp. 7–8.

Further, as a basic condition of receiving a bonus under the August 2022 Bonus Program, the employee must be employed at the time of payment date:

> To be eligible to receive a discretionary bonus award under this Program, a Participant must satisfy each of the following eligibility conditions (an "Eligible Position"):
>
> - Must be specifically identified by Walton as an eligible Participant and such eligibility must be communicated in writing (including electronic communications) to the individual
> - Must be employed as of the actual date of bonus payment distribution

. . .

> **No Payment of Bonus Awards following Termination or Resignation**
> In the event that a Participant's employment is terminated by Walton for any reason whatsoever, whether with or without with cause, or the Participant resigns his or her position, such Participant shall not be entitled to payment of any portion of a Bonus Payment not yet paid as at the date of termination or resignation.

*See* Ex. C, p. 7.

Plaintiff, as an at-will employee, was terminated on September 11, 2023. *See* Amended Complaint ¶ 26. As of the date of this filing, the transaction has not closed and several material conditions to close remain outstanding. *Id.* ¶ 28.

### III.   APPLICABLE LEGAL STANDARD

Plaintiff's fraud, quantum meruit, and breach of contract claims should be dismissed under Federal Rule of Civil Procedure 9(b) and 12(b)(6) for failure to state a claim.

Dismissal of an action pursuant to Rule 12(b)(6) is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the light most favorable to the plaintiff, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As the Fifth Circuit has further clarified:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.

*Coleman v. Sweetin*, 745 F.3d 756, 763-64 (5th Cir. 2014) (quotation marks and citations omitted).

Plaintiff's fraud claim should also be dismissed because Plaintiff has failed to plead with particularity as required by Federal Rule of Civil Procedure 9(b) and therefore failed to state a claim upon which relief can be granted under 12(b)(6). Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. If a plaintiff fails to meet the Rule 9(b) pleading requirement, then his fraud claims are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). It is well-established under Texas law that "[c]onclusory allegations of fraud are not sufficient to survive dismissal for failure to state a claim." *Keith v. Stoelting, Inc.*, 915 F.2d 996, 1000 (5th Cir. 1990).

## IV.    ARGUMENT AND AUTHORITIES

**A.    Plaintiff fails to state a plausible claim for fraud upon which relief can be granted.**

To establish fraud under Texas law, a plaintiff must show that: (1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury. *Barrow-Shaver Resources Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019).

### i.    *Plaintiff's fraud claim is too vague and fails under Rule 9(b).*

A heightened level of pleading is imposed for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b). The Fifth Circuit interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotations omitted). Put simply, Rule 9(b) requires the complaint to set forth "the who, what, when, where, and how" of the events at issue. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002) (internal quotations omitted). The Fifth Circuit further rejects the group pleading doctrine and consistently holds that Rule 9(b) does not allow allegations of fraudulent conduct against a group of defendants without specifying each defendant's fraudulent conduct. *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015). Because Plaintiff's Amended Complaint impermissibly group pleads alleged fraudulent conduct against "Defendants" collectively and contains none of the required elements to plead fraud with specificity against any particular Defendant, the fraud claim should be dismissed.

Plaintiff's threadbare recital that "Defendants falsely represented to Mr. Buford in writing that he would be paid $259,000 upon sale of the 1,164 acres" is an impermissible group pleading that falls woefully short of the requirements of Rule 9(b). *See* Amended Complaint ¶ 29. Even Plaintiff's allegation that he met with the CEO of Walton Global to "celebrate the upcoming closing" does not include any mention of a fraudulent representation. *See* Amended Complaint ¶¶ 24–25.

Further, Plaintiff makes no attempt to identify with specificity, as required under Rule 9(b), when Defendants (any of them) made the "promise," who made the "promise," or explain how or why the "promise" was fraudulent. Defendants are unaware of any such "promise" made to Plaintiff for $259,000 and can only assume that Plaintiff's Amended Complaint refers to the

August 2022 Bonus Program (which fails to serve as the basis for a fraud claim, as discussed below). Because Plaintiff fails to plead his fraud claim with the requisite specificity under Rule 9(b), the fraud claim should be dismissed.

### ii. *Plaintiff's fraud claim is barred by the at-will employment doctrine.*

The discretionary August 2022 Bonus Program cannot, as a matter of law, serve as a basis for fraud because it was illusory and contingent on continued at-will employment. The Supreme Court of Texas expressly addressed this issue in 2014 in response to a question presented by the Fifth Circuit—"Under Texas law, may at-will employees bring fraud claims against their employers for loss of their employment?" *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 399 (Tex. 2014). The Supreme Court of Texas responded, in part:

> We have not determined whether an at-will employee can sue his employer for fraud, but the courts of appeals have dealt with the issue and have almost all held that a fraud claim cannot be based on illusory promises of continued at-will employment.
> . . .
> An employer and employee may agree, for example, to arbitrate their disputes, or for reasonable restrictions on post-discharge competition, as long as other consideration is given. But if the employer or employee can avoid performance of a promise by exercising a right to terminate the at-will relationship, which each is perfectly free to do with or without reason at any time, the promise is illusory and cannot support an enforceable agreement.
> . . .
> Such an illusory promise can no more support an action for fraud than one for breach of contract. To recover for fraud, one must prove justifiable reliance on a material misrepresentation. A representation dependent on continued at-will employment cannot be material because employment can terminate at any time. Nor can one justifiably rely on the continuation of employment that can be terminated at will. "I will if I want to" is not fraud. And no one can claim recovery of damages for the loss of an employment relationship he had no right to continue.
>  . . .
> To allow a promise that is contingent on continued at-will employment to be enforced in a suit for fraud would mock the refusal of enforcement in a suit for breach of contract, making the non-existence of a contract action largely irrelevant, and would significantly impair the at-will rule.
> . . .
> As previously stated, "[a]t-will employment is an important and long-standing doctrine in Texas, and we have been reluctant to impose new common-law duties

>that would alter or conflict with the at-will relationship." Although common-law fraud is certainly not new, allowing it to be asserted to alter or conflict with at-will employment would be. For all these reasons, we answer the Fifth Circuit's first question: an at-will employee cannot bring an action for fraud that is dependent on continued employment.

*Id.* at 399–402.

The August 2022 Bonus Program was an "informational" pamphlet circulated to all eligible General Managers at Walton Global and its subsidiaries. *See* Ex. C, p. 1 "Overview." Section 3(c) of the Employment Agreement and the August 2022 Bonus Program clearly state that Walton Global retains discretion to issue—or not issue—a bonus at any time during Plaintiff's employment. Ex. A, § 3(c); Ex. C, pp. 7–8; *see Dittmann v. D.B. Zwirn & Co., L.P.*, No. H–09–402, 2010 WL 519692, at *17-18 (S.D. Tex. Feb. 8, 2010) (a bonus plan stating management retained discretion as to whether to pay a bonus granted the employer the right to unilaterally decide not to pay a bonus at any time). And because Plaintiff was an at-will employee whose employment was subject to termination at any time, the possibility of an incentive bonus in the future is illusory and, thus, not actionable for fraud pursuant to the clear direction by the Supreme Court of Texas. *Sawyer*, 430 S.W.3d at 399-402.

For each of these reasons, Plaintiff's claim for fraud should be dismissed.

**B.     Plaintiff fails to state a claim for quantum meruit upon which relief can be granted.**

Plaintiff's quantum meruit claim fails because (i) the Employment Agreement governs Plaintiff's bonus compensation, (ii) the work Plaintiff was hired to complete is the work that serves as the basis for his quantum meruit claim, and (iii) Plaintiff performed the work for his own benefit, *i.e.*, to receive the $220,000 annual compensation.

### i.     *The Employment Agreement governs Plaintiff's bonus compensation, if any.*

Where a valid express contract exists, claims of quantum meruit are barred as a matter of law. *Dittman*, 2010 WL 519692, at *6–7 (holding that claims for promissory estoppel and quantum

meruit based on oral promise for a bonus were barred where an express written contract governed the entitlement to the bonus); *Inglish v. Prudential Ins. Co. of Am.*, 928 S.W.2d 702 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (quantum meruit and unjust enrichment are predicated on absence of express contract controlling the circumstances); *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement.").

In *Dittman*, two employees alleged that their employer promised them a bonus, and brought claims for quantum meruit when the employer refused to pay the bonus. *Dittman*, 2010 WL 519692, at *5. However, there was a written agreement governing bonus entitlement. *Id.* In granting the employer summary judgment, the court held that because a written agreement governed the employees' entitlement to the bonus, the equitable claims of quantum meruit were barred as a matter of law. *Id.*

Similar to the *Dittman* plaintiffs, Plaintiff's alleged bonus in this case is governed expressly by Section 3(c) of the Employment Agreement. Thus, Plaintiff's claim for quantum meruit is barred by the written Employment Agreement as a matter of law. *Id.*; *Fortune Production Co.*, 52 S.W.3d at 684.

    ii.    ***Plaintiff's work was performed within the scope of his Employment Agreement.***

When an employee performs the job for which he is hired, a claim for quantum meruit for additional compensation is barred as a matter of law. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 154 (Tex. App. - Houston [1st Dist.] 2005, no pet.); *Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995). In *Beverick*, an employee claimed that he took on a special project for his employer to receive a bonus, and sued for quantum meruit based on the value of the extra services for the project. 186 S.W.3d at 154. The court held that, because the work performed was in the

scope of his employment, the employee could not maintain a claim for a bonus under a theory of quantum meruit. *Id.*

The same is true here. Plaintiff was hired to prepare certain tracts of land for sale. *See* Amended Complaint ¶ 10 ("Mr. Buford was hired by Walton Global to perform work for the Walton Texas entities as necessary to prepare for sale the following parcels of land. . ."); *compare* Amended Complaint ¶ 15 (Plaintiff's description of his duties for the Caldwell County properties) *with* Ex. A, Appendix A (Plaintiff's Duties and Responsibilities listed in his Employment Agreement). Plaintiff now claims he is owed a discretionary bonus for simply doing his job because he "worked more than 40 hours per week and missed many days and nights with his family in order to get the [land] ready for sale." *See* Amended Complaint ¶ 16. An employee's work does not guarantee compensation above his base salary, and Plaintiff himself asserts that he was hired to ready the properties in Caldwell County (*see id.* ¶ 10)—the same work for which he received his six-figure salary and now claims he is owed a bonus. Because Plaintiff did not perform extra services outside of the purpose for which he was hired (*i.e.*, to ready the certain properties for sale), Plaintiff's quantum meruit claim fails to state a plausible claim and should be dismissed. *See Beverick*, 186 S.W.3d at 154.

   iii. ***Plaintiff performed the work to receive his salary.***

Further, Plaintiff's claim for quantum meruit fails because plaintiff performed the services for his own benefit. *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988) ("Truly rendered services for the joint venture in an effort to enhance the success and profitability of a project in which he held a 40% ownership interest. Truly thus acted to benefit his own financial interests as well as those of his co-joint venturers."). Plaintiff was paid a generous salary of $220,000 to perform the duties and responsibilities necessary to prepare the land for sale, and he worked for Walton to

receive that salary. Ex. A, § 3(a). As a result, Plaintiff performed the services at issue for his own benefit in the form of a salary.

For each of these reasons, Plaintiff's quantum meruit claim fails to state a claim upon which relief can be granted and should be dismissed.

**C.     Plaintiff fails to state a claim for breach of contract upon which relief can be granted.**

Under Texas law, to prevail on a breach of contract claim, the plaintiff must show (1) the existence of a valid contract; (2) performance or tendered performance by plaintiff; (3) that defendant breached the contract; and (4) damages sustained by plaintiff as a result of the breach. *Smith Inter., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

Plaintiff's breach of contract claim here fails because (i) the Employment Agreement, by its express terms, disqualifies Plaintiff from being paid a bonus upon his termination and allows Walton absolute discretion whether and how much to pay in any bonus; and (ii) the Amended Complaint fails to identify what portion of the Employment Agreement or 2022 Bonus Program allegedly was breached. As a result, Plaintiff's breach of contract claim should be dismissed.

*i.     The Employment Agreement's terms preclude Plaintiff's claim for breach.*

The Employment Agreement expressly provides that, to receive a bonus, Plaintiff "***must be employed by Walton*** and must not have received a notice of termination . . . before the date upon which the bonus is actually paid." *See* Ex. A, § 3(c) (emphasis added). That alone disqualifies Plaintiff from any entitlement to the bonus he seeks after his employment was terminated on September 11, 2023. *See* Amended Complaint ¶ 26. Additionally, the Employment Agreement gave Walton "unfettered and absolute discretion" to decide the amount and timing of any bonuses, including that Plaintiff get zero. *See* Ex. A, § 3(c).

Pursuant to these express terms of the Employment Agreement, there could be no breach

of contract as a matter of law based on Walton not paying Plaintiff any bonus after his employment terminated. Therefore, the breach of contract claim should be dismissed.

        *ii.*       *The Amended Complaint does not allege any specific term was breached.*

In addition, Plaintiff's Amended Complaint fails to even plead any provision of his Employment Agreement or the 2022 Bonus Program that was breached. For this additional reason, Plaintiff fails to state a claim for breach of contract.

The Amended Complaint's conclusory and ambiguous allegation that "Defendants failed to comply with the terms of their bonus programs" (Amended Complaint ¶ 42) is insufficient to state a breach of contract claim for which relief can be granted. *See King v. Wells Fargo Bank, N.A.*, No. 3-11-CV-0945-M-BD, 2012 WL 1205163, at *2 (N.D. Tex. March 20, 2012) ("Under Texas law, . . . a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant."); *Sandhar v. Grewal*, No. H-08-2348, 2009 WL 175073, at *4 (S.D. Tex. Jan. 23, 2009) (plaintiff "must plead . . . the provisions of the contract allegedly breached" to survive a motion to dismiss). "[I]it is not enough to generally allege the existence of a contract and generally allege that a contract has been breached. Instead, to state a plausible breach of contract claim a plaintiff must allege which provision of an identified contract has been breached." *See Caine v. Wells Fargo Bank, N.A.*, No. H-17-2046, 2018 WL 3195102 at * 3 (S.D. Tex. Jun. 8, 2018) *report and recommendation adopted*, No. H-17-2046, 2018 WL 3159783 (S.D. Tex. June 28, 2018). Plaintiff's failure (and inability) to plead this key element of breach of contract renders this claim deficient under Rule 12(b)(6) and provides an additional ground to dismiss this claim.

**D.**    **Amendment Would be Futile**.

On its face, for the reasons set forth above, Plaintiff's fraud, quantum meruit, and breach of contract claims against Defendants should be dismissed with prejudice. Plaintiff has not

requested leave to amend and should not be given further opportunity to amend because amendment would be futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (futility of amendment is a "substantial reason" to deny plaintiff amendment); *see also U.S. ex Rel. Willard v. Humana Health Plan*, 336 F.3d 375 (5th Cir. 2003) (additional amendments would be futile because no indication that plaintiff would be able to allege the necessary "who, what, when, where, and how" of the alleged fraud"). Thus, Plaintiff's Amended Complaint should be dismissed with prejudice without opportunity to amend.

## V.     CONCLUSION

For each of these reasons, Defendants respectfully move the Court to dismiss all of Plaintiff's claims under Rules 9(b) and 12(b)(6) with prejudice because Plaintiff's Amended Complaint does not state a claim upon which relief can be granted. Defendants further request that the Court grant them such further relief to which they may be entitled.

Dated: December 1, 2023          Respectfully submitted,

*/s/ Karl G. Dial*
Karl G. Dial
  State Bar No. 05800400
  dialk@gtlaw.com

**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that on December 1, 2023, a true and correct copy of the above and foregoing was electronically filed with the clerk for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court, and separately was served by electronic mail on Plaintiff's counsel.

        */s/ Karl G. Dial*
        Karl G. Dial