IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOHN M. BUFORD, §<br>    *Plaintiff*, §<br>§<br>v. §<br>§<br>WALTON TEXAS, LP, WALTON §<br>TEXAS GP, LLC, and WALTON §<br>GLOBAL HOLDINGS, LLC, §<br>    *Defendants*. § | CASE NO. 1:23-cv-1193 |

<u>ORDER GRANTING DEFENDANTS WALTON TEXAS, LP, WALTON TEXAS GP, LLC, AND WALTON GLOBAL HOLDINGS, LLC'S MOTION TO DISMISS</u>

Before the Court is Defendants Walton Texas, LP ("Walton"); Walton Texas GP, LLC ("Walton GP"); and Walton Global Holdings, LLC's ("Walton Global") (collectively, "Defendants") Rules 12(b)(6) and 9(b) Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim. (Dkt. # 14).

Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing. After careful consideration of the memoranda and exhibits in support and in opposition to the motion, the Court, for the reasons that follow, **GRANTS** Defendants' Motion to Dismiss.

1

BACKGROUND

Plaintiff John M. Buford is a former employee of Defendant Walton Global.  (Dkt. #13 at 2.)  Plaintiff was hired by Walton Global to perform work for Walton and Walton GP.  (Id.)

During Plaintiff's employment, Walton Global tasked Plaintiff with preparing various parcels of land for sale.  (Dkt. #13 at 2–3.)  Plaintiff's primary responsibility was to manage and oversee the construction of a major solar project on the land prior to sale.  (Id. at 10–11.)  Plaintiff alleges he worked diligently for over a year, sometimes working more than 40 hours a week, to complete the project.  (Id.)

Plaintiff contends that, prior to his employment, he received an offer letter referencing two different bonus programs—namely, the Discretionary Bonus Program and the Walton Employment Incentive Program.  (Id. at 11.)  These two bonus programs are referenced in Plaintiff's employment agreement with Walton Global (the "Employment Agreement").  (Dkt. #14-1 at 5.)  Plaintiff further alleges he received an email during his employment with additional details regarding another bonus program, the Walton Asset Management Incentive Bonus Structure (the "Management Bonus Structure").  (Dkt. #13 at 11.)

Based on the third program's bonus calculator, Plaintiff estimates he is eligible for a $259,000 bonus in addition to his salary for the work he completed

on the land for sale.  (Dkt. #13 at 11.)  Plaintiff claims he "relied on the promises of bonuses[,]" incentivizing him to work quickly and diligently on the project.  (Id.)

Defendants terminated Plaintiff on September 11, 2023.  (Id. at 12.)  Plaintiff claims Defendants did so 10 business days before the originally-scheduled closing and to avoid paying him the "promised $259,000" bonus.  (Id.)

On September 19, 2023, Plaintiff filed suit in the 421st Judicial District of Caldwell County, Texas.  (Dkt. #1-3 at 3.)  Plaintiff's Original Petition states claims for fraud and quantum meruit against Defendants Walton and Walton GP.  (Id. at 3, 11, 12.)  Defendants timely removed the case on October 3, 2023.  (Dkt. # 1.)  On October 6, 2023, Defendants Walton and Walton GP each filed a Motion to Dismiss.  (Dkt. # 5.)  Thereafter, Plaintiff filed his First Amended Complaint ("the FAC") on November 20, 2023.  (Dkt. #13.)  The FAC states a fraud and quantum meruit claim against all three Defendants, along with a breach of contract against Defendant Walton Global.  (Id. at 12–13.)  Accordingly, this Court entered an order mooting Defendants' Motion to Dismiss on November 30, 2023.

Defendants then filed a Motion to Dismiss Plaintiff's FAC on December 1, 2023.  (Dkt. #14.)  On December 15, 2023, Plaintiff filed his Response to Defendants' Motion to Dismiss, and on December 22, 2023,

3

Defendants filed their Reply.  (Dkt. #16; Dkt. #17.)  The case was reassigned on December 7, 2023.  (Dkt. # 15.)

LEGAL STANDARD

I. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he [C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Twombly, 550 U.S. at 555–56.  In providing grounds for

relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissal with prejudice, "unless it is clear that the defects are incurable[.]" Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

II.     Rule 9(b)

Typically, a plaintiff's complaint must contain a "short and plaint statement of the claim showing that the pleader is entitled to relief." FED. R. CIV.

P. 8(a)(2).  Federal Rule of Civil Procedure 9(b), however, imposes a heightened standard of pleading fraud claims: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Tuchman, 14 F.3d at 1067.  Although the particularity demanded by Rule 9(b) differs with the facts of each case, see Guidry v. Bank of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992), a plaintiff pleading fraud must set forth "the who, what, when, and where . . . before access to the discovery process is granted."  Williams v. WMX Techs., Inc., 112 F.3d 175, 178 (5th Cir. 1997).  Further, "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)."  In re Urcarco Sec. Litig., 148 F.R.D. 561, 569 (N.D. Tex. 1993), aff'd sub nom. Melder v. Morris, 27 F.3d 1097 (5th Cir. 1994).  Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim. See Tuchman, 14 F.3d at 1067.

The Fifth Circuit further explained that, "[a]lthough Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)" and that "[t]he plaintiffs must set forth specific facts supporting an inference of fraud."  Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008) (internal quotation marks omitted; emphasis in original).  "Facts that show a defendant's motive to

6

commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent." U.S. ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 386 (5th Cir. 2003) (citing Rule 9(b)).  Further, "[i]f the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief." Dorsey, 540 F.3d at 339.  However, "where allegations are based on information and belief, the complaint must set for a factual basis for such belief." Humana, 336 F.3d at 385.

## DISCUSSION

Defendants argue that Plaintiff's claims for fraud, quantum meruit, and breach of contract should be dismissed. For reasons outlined below, Defendants' Motion to Dismiss is granted.

I.   Fraud

Plaintiff contends that Defendants falsely represented that Plaintiff would be paid $259,000 upon the sale of 1,164 acres.  (Dkt. #13 at 12.)  According to Plaintiff, he relied on Defendants' "promise" of the $259,000, which he never received.  (Id.)

Defendants assert that (1) Plaintiff's fraud claim is too vague and therefore fails under Rule 9(b), and (2) Plaintiff's claim is barred by the at-will employment doctrine.  (Id. at 11–13.)  First, Defendants contend that the FAC impermissibly groups Defendants together, without specifying which, if any, made

7

false representations to Plaintiff, thereby failing to meet the heightened pleading standard under Rule 9(b).  (Dkt. # 14 at 1.)  Additionally, Defendants assert that, under Texas law, employees are barred from raising fraud claims following discharge from their at-will employment positions.  (Id. at 13.)

    A. Failure to State a Claim Under Rule 9(b)

To state a valid fraud claim, a plaintiff must allege the following elements: 1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury.  Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997).  A misrepresentation is the "act or an instance of making a false or misleading assertion about something with the intent to deceive." Misrepresentation, BLACK'S LAW DICTIONARY (11th ed. 2019).  Under Texas law, the misstatement must generally be one of a "present existing fact[.]"  See Carnival Leisure Indus., Ltd. v. Aubin, 53 F.3d 716, 718 (5th Cir. 1995).  Under some circumstances, however, a "promise to do an act in the future is actionable fraud when made with the intention, design, and purpose of deceiving, and with no intention of performing the act."  Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc, 960 S.W.2d 41, 47 (Tex. 1998) (internal quotations omitted).

Here, Plaintiff did not allege that Defendants made a misstatement because Plaintiff did not plead that Defendants ever promised the $259,000 bonus.

The first bonus program referenced in the FAC and Plaintiff's Employment Agreement is the "*Discretionary Bonus Program*." (Dkt. #14-1 at 5.)[1] Under the terms of this program, employees "may become eligible to participate in [the program] should management decide to create a program or allow [employees] to participate[.]" (Id.) Moreover, "payment of such bonus, including the amount and timing thereof, will be in the *sole, unfettered and absolute discretion of Walton*." (Id.) (emphasis added). The second bonus program, the Walton Employment Incentive Program, contains the exact same disclaimer. (Id.)

Similarly, the third bonus program for General Managers explicitly states, "the bonus described herein is discretionary and may be changed, suspended, or discontinued by Walton at any time, with or without cause and with or without written notice." (Id. at 18.) These explicit reservations demonstrate Defendants' unequivocal intent to retain discretionary authority in awarding bonuses under these programs. Notice of the mere possibility of eligibility for a bonus program is not the same as a promise of a bonus. Without more, these programs alone do not constitute false representations because Defendants never promised a bonus. Plaintiff does not provide any further detail in the complaint

---

[1] The Court may consider the Employment Agreement in the context of a Rule 12(b)(6) motion because it was referred to in the plaintiff's complaint and [is] central to the plaintiff's claim. See Scanlan v. Tex. A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003).

about why these bonus programs constituted "promises," despite their clearly discretionary language. Accordingly, Plaintiff's complaint fails to adequately allege the first element of fraud—that Defendants made a material misrepresentation.

Further, Defendants fail to allege with specificity *who* made the false misrepresentations. Under Rule 9(b), "general allegations, which do not state with particularity what representations each defendant made, do not meet" the heightened standard. Unimobil 84, Inc. v. Spurney, 797 F.2d 214, 217 (5th Cir. 1986). Without specifying which defendant made misrepresentations, the FAC vaguely avers that "[t]he offer letter to Mr. Buford specifically referenced two bonus programs" and "Mr. Buford was provided details about a third bonus program." (Dkt. #13 at 11). The Court will not infer which defendant, if any, made representations to Plaintiff. Therefore, Plaintiff fails to state a fraud claim against Defendants.

B. The At-Will Employment Doctrine

As an alternative argument, Defendants also correctly assert Plaintiff's fraud claim is barred by the at-will employment doctrine. To recover for fraud, one must prove justifiable reliance on a material misrepresentation. Sawyer v. E.I. DuPont de Nemours & Co., 754 F.3d 313, 315 (5th Cir. 2014) (quoting Sawyer v. E.I. Du Pont de Nemours & Co., 430 S.W.3d 396, 401 (Tex. 2014)). A

representation dependent on continued at-will employment cannot be material nor can one justifiably rely on that representation because the employment can terminate at any time.  Id.  Without justifiable reliance on a material misrepresentation, a fraud claim cannot stand.  Id.

The at-will employment doctrine precludes justifiable reliance here because Plaintiff is an at-will employee, and the bonus programs expressly limit bonus eligibility to current employees.  The programs state, "To be eligible for such bonus, You must be employed by Walton and must not have received a notice of termination or provided notice of separation before the date upon which the bonus is actually paid." (Dkt. #14-1 at 5.)  Similarly, the terms and conditions of the third bonus program state that "[i]n the event that a Participant's employment is terminated by Walton for any reason whatsoever . . . such Participant shall not be entitled to payment of any portion of a bonus Payment not yet paid as at the date of termination or resignation." (Id. at 24.)  Thus, even if Defendants had made a false promise of a bonus to Plaintiff, Plaintiff would not have been justified in relying on those representations because they were explicitly contingent upon his continued at-will employment.

The Court is not convinced that, if given the opportunity to amend, Plaintiff could allege facts to support a finding of misrepresentation.  If those facts were available to Plaintiff, and Defendants did indeed make misrepresentations,

11

Plaintiff would have alleged as much in his first two complaints. Even so, Plaintiff would likely be barred from a claim for those representations on account of the at-will employment doctrine. Based on these incurable defects, Plaintiff's fraud claim is dismissed with prejudice.

## II. Quantum Meruit

Plaintiff contends he is entitled to damages in quantum meruit for the valuable services he rendered to Defendants. (Dkt. # 13 at 13.) He claims that he went "above and beyond in his efforts to get the sale of the 1,164 acres over the finish line." (Id.) Because of this, he "completed all the work necessary for him to earn the promised $259,000." (Id.) Defendants assert that Plaintiff's claim is barred by the existence of a valid contract, under which Plaintiff was compensated for the services provided.

Under Texas law, "[t]o recover under quantum meruit, a claimant must prove that: (1) valuable services were rendered or materials furnished, (2) to the person sought to be charged, (3) which services or materials were accepted, used and enjoyed by that person, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, was expected to be paid by him." Fulgham v. Fischer, 349 S.W.3d 153, 159 (Tex. App.—Dallas 2011, no pet.) (citing Vortt Expl. Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990)). A common defense to a claim for damages in

quantum meruit is the existence of a valid contract that covers the services provided by the claimant. The Fifth Circuit has aptly described this defense:

> [Q]uantum meruit allows for an equitable recovery based upon the promise *implied by law* to pay for beneficial services rendered and knowingly accepted. If a valid contract covers the services provided, the party generally cannot recover under a quantum meruit theory.

Purselley v. Lockheed Martin Corp., 322 F.App'x 399, 403 (5th Cir. 2009) (internal citations and quotations omitted).

Here, both Plaintiff and Defendants agree that Plaintiff rendered valuable services. (Dkt. #13 at 10–11; Dkt. #14 at 16). The issue is not Plaintiff's performance, but whether Plaintiff was justified in expecting an additional $259,000 in compensation and should, in equity, be paid that amount.

The Employment Agreement, however, does indeed cover the terms of Plaintiff's compensation: "You will be paid a based annualized salary of Two Hundred and Twenty Thousand US Dollars [] subject to any and all applicable deductions, to be paid on a semi-monthly basis (24 pay periods in a calendar year)." (Dkt. #14-1 at 5.) Plaintiff claims that he worked more than 40 hours per week at times, but he does not contend he performed any additional work outside the scope of the Employment Agreement that might entitle him to additional compensation. (Dkt. #13 at 11, n13). Here, Plaintiff rendered valuable services pursuant to his Employment Agreement, for which Defendants compensated him adequately. Defendants were not unjustly enriched for limiting Plaintiff's

13

compensation to the contractually negotiated amount and withholding the bonus program.

For the foregoing reasons, Plaintiff's quantum meruit claim is dismissed.

III. Breach of Contract

Lastly, Plaintiff contends Defendant Walton Global breached its contract with Plaintiff by failing to comply with the terms of their bonus programs. (Dkt. #13 at 13.)  Although the Complaint is vague and sparse, the breach section references all three bonus programs, so the Court will assume Plaintiff intends to assert a claim for breach of contract under each.  (Id.)  In their Motion to Dismiss, Defendants argue the Employment Agreement's discretionary language precludes Plaintiff's claim for breach, and the Amended Complaint does not allege any specific term was breached.  (Dkt. #14 at 17–18.)

To assert a viable claim for breach of contract in Texas, a Plaintiff must allege the following elements: "'(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach.'"  Brooks v. Excellence Mortg., Ltd., 486 S.W.3d 29, 36 (Tex. App—San Antonio 2015, pet. denied) (quoting McLaughlin, Inc. v. Northstar Drilling Techs., Inc., 138 S.W.3d 24, 27 (Tex. App.—San Antonio 2004, no pet.)).

14

A. Claim for Breach of the Employment Agreement

Plaintiff contends that, in failing to adhere to the terms of the two bonus programs referenced in his Employment Agreement, Defendant Walton Global breached the Employment Agreement. (Dkt. #13 at 13.).

"A breach [of contract] occurs when a party fails or refuses to do something he has promised to do." Mays v. Pierce, 203 S.W.3d 564, 575 (Tex.App—Houston [14th Dist.] 2006, pet. denied).

Here, Plaintiff contends the references in his Employment Agreement to two bonus programs constitute promises to perform on Defendant Walton Global's part. (Dkt. #13 at 13.) As previously discussed, these bonus programs are explicitly discretionary and do not promise a bonus award. Defendants exercised their discretionary power in choosing not to award Plaintiff a bonus in excess of his negotiated salary and did not act contrary to the terms of the Employment Agreement.

For these reasons, Plaintiffs failed to plead that Defendants breached the Employment Agreement.

B. Claim for Breach of the Management Bonus Structure

Plaintiff also argues Defendants are liable for breach of contract by not complying with the terms of the Management Bonus Structure. (Dkt. #13 at 13.) Defendants assert that, much like the bonus programs referenced in the

Employment Agreement, the Management Bonus Structure is discretionary. (Dkt. #14 at 17.)

Here, Plaintiff claims he "was provided details about a third bonus program, the Walton Asset Management Incentive Bonus Structure specifically for General Managers such as Buford." (Dkt. #13 at 11.) The Management Bonus Structure provides, in relevant part, "[e]ligibility to participate in this Program . . . does not guarantee that any bonus will actually be paid and in some cases a Participant may not receive a bonus." (Dkt. #14-1 at 24.) The Bonus Structure further provides, "[n]othing in this Program shall be construed to imply the creation of a term contract between Walton and any Participant, nor a guarantee of employment for any specific period of time." (Id. at 25.)

Mere notice of one's eligibility for a bonus does not automatically constitute a contractual promise to grant a bonus. See Lewis v. Vitol, S.A., No. 01-05-00367-CV, 2006 WL 1767138, at *5 (Tex.App.—Houston [1st Dist.] June 29, 2006, no pet) (mem. op.) (finding that no valid written contract existed when the bonus provision of the employment contract merely stated that the employee was eligible to receive a bonus at the sole discretion of management). Therefore, Defendants fail to plead how the notice of his eligibility for the bonus under the Management Bonus Structure established a valid contract. The language in the Management Bonus Structure explicitly disclaims any promise to Plaintiff

16

regarding a bonus, emphasizing that eligibility alone does not entitled Plaintiff to a bonus.

In sum, Plaintiff fails to allege how Defendants could have established a valid contract or breached the contract in light of the explicit disclaimers in the Management Bonus Structure.

For these reasons, Plaintiff's breach of contract claim is dismissed with prejudice, as it appears amendment would be futile.

## CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' Motion to Dismiss. (Dkt. #14.)  Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE.**  The Clerk is instructed to **CLOSE THE CASE**.

Signed: Austin, Texas, May 31, 2024.

_____
David Alan Ezra
Senior United States District Judge